ANQUILLARE, LIPNICKI, RUOCCO AND COMPANY *v.*
VCR REALTY ASSOCIATES ET AL.
(AC 22004)

Schaller, Bishop and Peters, Js.

Argued June 3—officially released October 8, 2002

*Mark T. Kelly*, for the appellant (plaintiff).

*Joel M. Jolles*, for the appellees (defendants).

*Opinion*

PETERS, J. Pursuant to the United States Bankruptcy Code, if a Bankruptcy Court authorizes an accounting firm to provide professional services, the firm may request payment of its fees during the administration of the bankrupt estate. 11 U.S.C. § 503 (b).[1] If the firm has not received payment before the dismissal of the bankruptcy proceedings, it becomes a general creditor of the debtor who initiated bankruptcy proceedings. 11

[1] Section 503 (b) of title 11 of the United States Code, entitled "Allowance of administrative expenses," provides in relevant part:

"(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

"(b) After notice and a hearing, there shall be allowed, administrative expenses . . . including—

"(1) (A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case . . . .

"(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant. . . ."

U.S.C. § 349 (b).[2] In this case, we must determine how long the firm may wait to assert its claim against that person. Specifically, we must decide when the firm's claim accrued for the purpose of a statute of limitations. The trial court held that the claim accrued at the time when the firm completed its services for the bankruptcy estate. The firm argues, however, that the claim accrued at the time when the bankruptcy petition was dismissed without any distribution of the assets of the bankruptcy estate. We agree with the firm and reverse the judgment of the trial court.

The plaintiff, Anquillare, Lipnicki, Ruocco & Company, an accounting firm, brought an action for breach of contract against the defendant partnership, VCR Realty Associates.[3] The plaintiff alleged that the defendant had filed a petition for protection against creditors pursuant to chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq., and that, two years later, the defendant had obtained a dismissal of the petition. The plaintiff further alleged that, during this interval, it had performed accounting services for the bankruptcy trustee, the debtor in possession,[4] for which the plaintiff had not been paid during the pendency of the bank-

---

[2] Section 349 of title 11 of the United States Code, entitled "Effect of dismissal," provides in relevant part: "(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title . . . (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

[3] VCR Realty Associates is a partnership. The plaintiff also named as defendants its general partners, Vincent Farricielli and Richard Farricielli. Under partnership law, the partners were jointly and severally liable for the debts of the partnership. General Statutes § 34-327 (a). For convenience, we will refer to all three as the defendant, in the singular.

[4] The fact that the postpetition bankruptcy estate was being administered by the debtor in possession, rather than by a trustee, is of no legal significance, under the circumstances of this case, because 11 U.S.C. § 503 (b) does not differentiate between an appointed trustee or a debtor in possession. *Bellus* v. *United States*, 125 F.3d 821, 823–24 (9th Cir. 1997).

ruptcy proceedings. The plaintiff sought to recover its fees, interest and attorney's fees.

The defendant did not dispute the plaintiff's factual allegations. Furthermore, it did not dispute that, after the dismissal of the bankruptcy petition, the bankruptcy estate revested in the defendant; 11 U.S.C. § 349 (b); and that the defendant thereupon became liable for costs associated with postpetition transactions. *In re Safren*, 65 B.R. 566, 571 (Bankr. C.D. Cal. 1986); 3 W. Collier, Bankruptcy (15th Ed. Rev. 2000) § 349.03. Instead, the defendant filed an affirmative defense based on the alleged expiration of the applicable statute of limitations.[5] The trial court rendered a judgment in favor of the defendant on that issue.

The parties stipulated to most of the relevant facts. On November 30, 1992, the defendant sought chapter 11 protection. Thereafter, until July 16, 1993, the plaintiff performed accounting services worth $4013.46.[6] On November 23, 1994, in response to a motion by the defendant, the bankruptcy petition was dismissed. On March 31, 2000, the plaintiff brought the present cause of action.

The trial court made two additional findings. First, it implicitly found that the plaintiff's fees were administrative expenses of the bankruptcy estate when it stated that the plaintiff might have filed a claim pursuant to 11 U.S.C. § 503 (b). That section deals only with recovery for administrative expenses. Second, it found that "according to the plaintiff . . . [its services] were provided with the approval of the [Bankruptcy] Court."

---

[5] The defendant withdrew its second affirmative defense relating to the statute of frauds.

[6] Although the parties stipulated that the plaintiff had performed services worth $5513.46, it performed $1500 of these services on November 9, 1992, before the filing of the bankruptcy petition. In its appeal, the plaintiff has withdrawn its claim to recover this $1500.

Significantly, the court did *not* say that the defendant contested this allegation.[7]

In its appellate brief, the defendant disputes these findings. The defendant did not dispute them at trial. It filed no motion for articulation to clarify the court's opinion. See Practice Book § 66-5. In its appeal, the defendant has not raised any claim of alternate grounds for affirmation of the trial court's judgment. All that we have before us are repeated assertions in the defendant's brief that ask us to ignore the court's findings. In effect, the defendant would have us decide this case on facts directly opposite to those found by the trial court. It is axiomatic that this court cannot find facts. This case must be reviewed on the facts found by the trial court.

The trial court concluded that General Statutes § 52-576 (a) barred the plaintiff's claim for relief. This statute provides, in relevant part: "No action for an account . . . shall be brought but within six years after the right of action accrues . . . ." The court rejected the argument of the plaintiff that its cause of action accrued on the date on which the bankruptcy petition was dismissed. Instead, it agreed with the defendant that the claim accrued on the date on which the plaintiff completed the accounting services that it rendered to the defendant in its role as bankruptcy trustee.

In coming to its conclusion, the court held that ongoing bankruptcy proceedings did not toll the accrual of the plaintiff's postpetition claim. In the court's view, the statute of limitations began to run when the plaintiff

---

[7] In its appellate brief, the defendant disputes the latter finding. It maintains that the services provided by the plaintiff were not administrative services because the Bankruptcy Court had not held any hearings in that respect. This argument comes too late. The defendant made no effort, at trial, to seek rectification or articulation of the findings of the trial court. We have no way of knowing the basis for the court's statement.To state the obvious, we do not make findings of fact.

completed its services to the bankruptcy estate because the plaintiff could have, and inferentially should have, sought payment from the bankruptcy trustee while the bankruptcy proceedings were pending.[8]

In its appeal, the plaintiff challenges the validity of the court's conclusion of law.[9] Our review of the issues, therefore, is plenary. *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 598, 790 A.2d 1178 (2002); *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000); *Shoreline Communications, Inc.* v. *Norwich Taxi, LLC*, 70 Conn. App. 60, 65, 797 A.2d 1165 (2002).

We agree with the trial court that there are no provisions in the federal Bankruptcy Code that allow a debtor's filing of a bankruptcy petition to toll the running of the statute of limitations with respect to a postpetition claim. See *Rogers* v. *Corrosion Products, Inc.*, 42 F.3d 292, 297 (5th Cir. 1995); *Bennett* v. *United States Lines, Inc.*, 64 F.3d 62, 66 (2d Cir. 1995); *Aslanidis* v. *United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993). Likewise, a postpetition creditor is not entitled to suspension of a statute of limitations because 11 U.S.C. § 108 (c)[10] provides protection only for prepetition cred-

---

[8] On the present record, we presume that no request for payment was then made.

[9] In this appeal, the plaintiff has not challenged the trial court's conclusion that the statute of limitations barred the plaintiff's right to obtain payment for accounting services that it performed before the initiation of bankruptcy proceedings.

[10] Section 108 of title 11 of the United States Code, entitled "Extension of time," provides in relevant part:

"(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a Bankruptcy Court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

"(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

"(2) 30 days after notice of the termination or expiration of the stay under

itors.[11] Accordingly, we must decide this case with the understanding that the six year time limitation stated in § 52-576 (a) was in no way extended by the bankruptcy proceeding.

The conclusion that bankruptcy proceedings did not toll or suspend the running of the statute of limitations does not, however, determine the date on which the cause of action accrued. Unless an applicable statute provides to the contrary, "[t]he true test [for accrual] is to establish the time when the plaintiff first could have successfully maintained an action." (Internal quotation marks omitted.) *Polizos* v. *Nationwide Mutual Ins. Co.*, 255 Conn. 601, 609, 767 A.2d 1202 (2001); *Wynn* v. *Metropolitan Property & Casualty Ins. Co.*, 30 Conn. App. 803, 808, 623 A.2d 66 (1993), aff'd, 228 Conn. 436, 635 A.2d 814 (1994).

The trial court held that the plaintiff's cause of action accrued upon the completion of its services to the bankruptcy estate because, in the court's view, the plaintiff had a right to payment at that time. It relied on a non-bankruptcy case for the proposition that a common-law right of action accrues upon the completion of the services rendered. See *R.A. Civitello Co.* v. *New Haven*, 6 Conn. App. 212, 215–16, 504 A.2d 542 (1986). The court concluded that bankruptcy law was to the same effect. It held that, upon completion of its services, the plaintiff could have obtained immediate payment from

section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim."

[11] The statute does not apply to the claims of the plaintiff, a postpetition creditor. For prepetition creditors, the statute permits claims to be filed within thirty days of the termination of bankruptcy proceedings. The statute suspends the operation of statutes of limitation to provide a remedy for creditors who, because of the automatic stay in bankruptcy procedings; see 11 U.S.C. § 362; could not enforce their claims while bankruptcy proceedings were pending. See, e.g., *In re Etherton*, 88 F. Sup. 874, 879 n.15 (S.D. Cal. 1950); *In re Berg*, 33 F. Sup. 700, 702–703 (D. Minn. 1940), cited in *Bridgeport* v. *Debek*, 210 Conn. 175, 188, 554 A.2d 728 (1989).

the Bankruptcy Court. For this proposition, the court relied on 11 U.S.C. § 503 (b), which permits administrative creditors to seek immediate allowance of their claims. It held that the plaintiff's contract claim was time barred because, as a result of 11 U.S.C. § 503 (b), it accrued upon the plaintiff's completion of its professional services. The plaintiff contests the validity of the court's conclusion.

On its face, 11 U.S.C. § 503 (b) appears to support the reasoning of the trial court. In relevant part, 11 U.S.C. § 503 (b) provides: "After notice and a hearing [before the Bankruptcy Court], there *shall be allowed* administrative expenses . . . including — (1) (A) the actual, necessary costs of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case . . . ." (Emphasis added.)[12] This statute does not, however, describe the consequences that attach to the allowance of a claim for payment.

The meaning of "shall be *allowed*" in 11 U.S.C. § 503 (b) is clarified by 11 U.S.C. § 331, entitled "Interim compensation."[13] That statute addresses the right of compensation of an administrative creditor who has been authorized to provide professional services for the bankruptcy estate. For such a claimant, a Bankruptcy

---

[12] Administrative creditors receive special treatment during bankruptcy proceedings to induce them to continue to provide services that are needed by the bankruptcy estate. See *In re Merry-Go-Round Enterprises, Inc.*, 180 F.3d 149, 158 (4th Cir. 1999); *In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1415–16 (5th Cir. 1992).

[13] Section 331 of title 11 of the United States Code provides: "A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement."

Court *"may allow and disburse . . .* compensation or reimbursement." (Emphasis added.) Indeed, federal cases hold that even "[i]nterim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable." 11 U.S.C. § 331. *In re Evangeline Refining Co.*, 890 F.2d 1312, 1322 (5th Cir. 1989); see also *In re Anolik*, 207 B.R. 34, 37 (Bankr. D. Mass. 1997) (interim compensation awards are interlocutory and subject to disgorgement).

Two principles flow logically from the juxtaposition of §§ 503 (b) and 331. First, bankruptcy law distinguishes between the allowance of a claim and the disbursement of moneys for its payment. Second, bankruptcy law leaves any decision about disbursements to the discretion of the Bankruptcy Court.

It follows from these principles that, although the plaintiff might have presented its bills to the debtor in possession, acting as bankruptcy trustee, it had no duty to do so. It had no right to require the Bankruptcy Court to pay these bills at that time.

There was no event before the dismissal of the bankruptcy petition that would have triggered an obligation to request timely payment. During bankruptcy proceedings, there is "no bar date to filing requests for the allowance of administrative expenses under § 503 . . . ." *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1071 (9th Cir. 1998). "Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure . . . set forth a deadline within which administrative claims must be filed . . . ." (Internal quotation marks omitted.) *In re Southern Soya Corp.*, 251 B.R. 302, 311 (Bankr. D.S.C. 2000). The timing for filing a request for payment of administrative expenses is a matter to be determined within the discretion of the Bankruptcy Court. 4 W. Collier, Bankruptcy, supra, § 503.02 [2].

This case would have been different if the bankruptcy proceedings had resulted in a distribution plan. The plaintiff would then have been *required* to seek payment as a priority claimant to the bankrupt's assets. 11 U.S.C. § 1107.[14] Indeed, even earlier, if the plaintiff had been notified of a claim bar date, it would have been *required* to file a proof of claim with the Bankruptcy Court before the deadline established by the court. 11 U.S.C § 1111 (a);[15] Rules of Bankruptcy Procedure, Rule 3003 (c) (2);[16] *Pioneer Investment Services Co.* v. *Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 383, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). Under the circumstances of this case, these requirements are inapplicable.

On the present record, upon the completion of its accounting services, the plaintiff had the right to *request* payment but no right to *require* payment. The test for the accrual of a cause of action is not met by a demonstration that a claimant had a right to request payment. The statute does not begin to run before the time "when the plaintiff first could have successfully maintained an action." (Internal quotation marks omitted.) *Polizos* v.

---

[14] Section 1107 of title 11 of the United States Code, entitled "Rights, powers, and duties of debtor in possession," provides in relevant part: "(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter."

[15] Section 1111 (a) of title 11 of the United States Code, entitled "Claims and interests," provides in relevant part: "A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules . . . except a claim or interest that is scheduled as disputed, contingent, or unliquidated."

[16] Rules of Bankruptcy Procedure, Rule 3003 (c) (2), provides in relevant part: "Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed . . . any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."

*Nationwide Mutual Ins. Co.*, supra, 255 Conn. 609. The first time that the plaintiff could have maintained an action was the date of the dismissal of the bankruptcy petition.

In sum, the trial court improperly concluded that the plaintiff's cause of action accrued before the dismissal of the bankruptcy petition filed by the defendant. The plaintiff's complaint was timely. Because the defendant has not claimed that the court's judgment should be affirmed on any other ground, the plaintiff is entitled to be paid for the services that it rendered to the bankruptcy trustee during the pendency of the bankruptcy petition.

The amount of the plaintiff's damages have, however, not yet been determined with respect to interest and fees. Upon remand, the trial court must make this determination.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff on the merits of its claim and for further proceedings to determine the amount of the judgment.

In this opinion the other judges concurred.

