STATE OF CONNECTICUT *v.* KENNETH PORTER
(AC 22802)

Lavery, C. J., and Schaller and Flynn, Js.

Argued January 15—officially released April 29, 2003

*H. Owen Chace*, special public defender, for the appellant (defendant).

*Lucio DeLuca*, certified legal intern, with whom were *Rita M. Shair*, senior assistant state's attorney, and, on the brief, *John A. Connelly*, state's attorney, and *Catherine C. Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Kenneth Porter, appeals from the judgment of conviction, rendered after a jury trial, of assault of public safety or emergency medical personnel in violation of General Statutes § 53a-167c (a) (1),[1] interfering with an officer in violation of General Statutes (Rev. to 1999) § 53a-167a (a),[2] and breach of the peace in violation of General Statutes (Rev. to 1999) § 53a-181 (1) and (2).[3] On appeal, the defendant claims that (1) the court violated his constitu-

[1] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault of public safety or emergency medical personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ."

[2] General Statutes (Rev. to 1999) § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

[3] General Statutes (Rev. to 1999) § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another . . . ."

tional guarantee against double jeopardy, (2) the state produced insufficient evidence to establish that he had the requisite intent to breach the peace, to assault a peace officer and to interfere with a peace officer, and (3) the court violated his right to counsel under the sixth and fourteenth amendments to the United States constitution by failing to canvass him adequately to determine if he was making a knowing, voluntary and intelligent waiver of his right to counsel in accordance with Practice Book § 44-3.[4] We affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. On December 2, 2000, Richard Sutphin was driving a public utilities truck on Cooke Street in Waterbury. Sutphin was forced to stop the truck at the intersection of Cooke Street and Buckingham Street because the defendant was in the roadway, pushing a car. When the car that the defendant was pushing was driven away, the defendant approached the front of Sutphin's truck. Upon reaching the truck, the defendant began to yell, pull his hair out, and wildly strike the truck with his fists and head. The defendant continued that behavior for approximately fifteen minutes. During that time, Sutphin radioed for police assistance, left the truck and ran toward an approaching police car that was driven by Sergeant Paul Ezzo of the Waterbury police department.

[4] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

At that time, the defendant, seeing an approaching vehicle driven by Andelino Vilar, turned away from the truck and jumped onto the hood of Vilar's car. The defendant began to strike the car. During the attack, the defendant reached through an open window, grabbed Vilar's sweater and attempted to pull Vilar out of the vehicle.

Ezzo approached the defendant and informed him that he was placing him under arrest. The defendant began to swing, kick and bite at Ezzo. Ezzo, Sutphin and Ted Peil, a private citizen, attempted to restrain the defendant. While wrestling the defendant to the ground, Ezzo called for additional police assistance and was repeatedly struck by the defendant. Ezzo sprayed the defendant with Mace. The Mace had little or no effect on the defendant. When additional police support arrived, it eventually took seven officers approximately thirty minutes to subdue and to place the defendant under arrest.

The defendant was charged with one count of assault in the third degree in violation of General Statutes § 53a-61, two counts of breach of the peace in violation of § 53a-181 (a) (1) and (2), one count of criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1), two counts of assault of public safety personnel in violation of § 53a-167c (a) and two counts of interfering with an officer in violation of § 53a-167a (a).

After a jury trial, at which the defendant represented himself with the assistance of standby counsel, the defendant was convicted of one count of assault of public safety personnel, one count of interfering with an officer and two counts of breach of the peace. The defendant now appeals. Additional facts will be provided as necessary.

I

The defendant first claims that the court violated his constitutional guarantee against double jeopardy.

Specifically, the defendant argues that the court improperly refused to instruct the jury that interfering with an officer is a lesser offense included in the greater offense of assault of public safety personnel in violation of the fifth and fourteenth amendments[5] to the United States constitution.[6]

The following additional facts are necessary to the resolution of this claim. The defendant was initially charged in an eight count information. On November 1, 2001, the state filed a part B information charging the defendant with being a persistent serious felony offender in violation of General Statutes (Rev. to 1999) § 53a-40 (b), now (c).[7]

On November 5, 2001, the state filed a long form substitute information. Counts five and six, respec-

_____

[5] The defendant does not claim that the court's action violated article first, § 8, of the constitution of Connecticut. We therefore limit our review to an analysis under the federal constitution.

[6] Although the defendant casts his assertion as a single claim, after a thorough review of his brief, we conclude that his claim actually is comprised of two separate claims. The claims are: (1) that the crime of interfering with an officer is a lesser offense included within the greater offense of assault of a peace officer and, therefore, the defendant's protections against double jeopardy were violated; and (2) the court improperly failed to give a jury instruction on the lesser included offense.

Although the defendant has briefed the double jeopardy claim adequately, he has failed to brief his claim adequately regarding the denial of the request to charge. "Claims that are inadequately briefed are deemed *abandoned*, and we are not bound to review them." *State* v. *Edward B.*, 72 Conn. App. 282, 298, 806 A.2d 64, cert. denied, 262 Conn. 910, 810 A.2d 276 (2002). Instead, the defendant merely labels his claim so that it is flavored as a claim alleging the improper denial of a jury charge, but he provides no analysis relative to the court's denial of the instruction. Compare *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980). Accordingly, we decline to address the second claim.

[7] General Statutes (Rev. to 1999) § 53a-40 (b), now (c), provides in relevant part: "A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. . . ."

tively, accused the defendant of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1) relative to acts that occurred "shortly after 2:00 in the afternoon of December 2, 2000, on or about 191 Cooke Street in the City of Waterbury, CT [where] the said Kenneth Porter did with intent to prevent a reasonably identifiable peace officer from performing his duties and while such peace officer was acting in the performance of his duties, he caused physical injury to such peace [officers]" Richard Valente and Ezzo. Counts seven and eight, respectively, accused the defendant of interfering with an officer in violation of § 53a-167a (a) relative to acts that occurred "at a time shortly after 2:00 in the afternoon on December 2, 2000, on or about 191 Cooke Street in the City of Waterbury, CT [where] the said Kenneth Porter did obstruct, resist, hinder or endanger . . . peace [officers]" Valente and Ezzo.

The jury trial commenced on November 7, 2001. On November 13, 2001, the court dismissed counts one and four of the information, which alleged assault in the third degree and criminal mischief in the third degree, respectively. On November 14, 2001, the jury returned a guilty verdict with respect to counts two, three, six and eight. The defendant was acquitted of the charges alleged in counts five and seven.[8]

Although the defendant admits that he raises this claim of double jeopardy, arising in the context of a single trial, for the first time on appeal, our Supreme Court has ruled that such double jeopardy claims are reviewable under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), if the four prongs of *Golding* are satisfied.[9] See *State* v. *Chicano*, 216 Conn. 699, 704–705, 584

---

[8] The defendant was found guilty of assaulting and interfering with Ezzo. The jury found the defendant not guilty of assaulting and interfering with Valente.

[9] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right;

A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); see also *State* v. *Denson*, 67 Conn. App. 803, 807–808, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002).

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . In conducting this inquiry, we look only to the relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Denson*, supra, 67 Conn. App. 808–809.

Turning to the first prong of the *Blockburger* test, the charged offenses in counts five through eight arose out of the same act or transaction. In those four counts of the substitute information, the state alleged that the crimes were committed at the same time and place: "2:00 in the afternoon of December 2, 2000, on or about 191 Cooke Street in the City of Waterbury, CT . . . ." With respect to the charges of interfering with an offi-

(3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hobson*, 68 Conn. App. 40, 47, 789 A.2d 557, cert. denied, 260 Conn. 910, 796 A.2d 557 (2002).

cer, the act of interfering arose directly out of the assault charges alleged in counts five and six. The first prong of the *Blockburger* test is, therefore, satisfied.

Turning to the second prong of the *Blockburger* test, "[t]he relevant inquiry then becomes whether each statutory violation requires proof of a fact which the other does not. . . . It is well established that if two offenses stand in the relationship of greater and lesser included offense, then [t]he greater offense is . . . by definition the same for purposes of double jeopardy as any lesser offense included in it." (Citations omitted; internal quotation marks omitted.) *State* v. *Flynn*, 14 Conn. App. 10, 17, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). We have previously determined that "a person could not commit the greater offense of assault on a peace officer without having committed the lesser offense of interfering with a peace officer."[10] Id., 19. In other words, "[i]t is theoretically impossible to have a situation where one, with intent

---

[10] In light of our reliance on *Flynn*, we also must consider our decision in *State* v. *Jenkins*, 40 Conn. App. 601, 612, 672 A.2d 969, cert. denied, 237 Conn. 918, 676 A.2d 1374 (1996). In *Jenkins*, we stated that despite our holding in *Flynn*, "[t]he *Blockburger* test is a rule of statutory construction and its application does not result in a conclusive presumption. . . . Our Supreme Court . . . has held on numerous occasions that . . . [w]here crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore when two or more persons are the victims of a single episode there are as many offenses as there are victims." (Internal quotation marks omitted.) Id., 612. In *Jenkins*, this court noted that "a peace officer" in General Statutes § 53a-167c and "an officer" in General Statutes § 53a-167a are "in the singular and there is no indication that the defendant can get a bargain rate . . . when two officers are involved." (Citation omitted; internal quotation marks omitted.) *State* v. *Jenkins*, supra, 613. Therefore, in *Jenkins*, we concluded that "§§ 53a-167c and 53a-167a authorize punishment for separate violations against each officer, regardless of whether the violations were spatially linked." Id.

In the case at bar, although two different officers, Valente and Ezzo, were named in counts five through eight, the defendant was convicted of only counts six and eight which referred solely to Ezzo. Accordingly, we find *Jenkins* distinguishable and conclude that count eight is a lesser included offense of count six.

to prevent the performance of duties of a peace officer . . . causes physical injury to an officer . . . without at the same time obstructing, hindering, resisting or endangering that officer in the performance of his duties." Id. Because the defendant was convicted of the charges alleged in counts six and eight, for acts solely against Ezzo, we conclude that the second prong of the *Blockburger* test also is satisfied.

Because we have determined that the offense alleged in count eight was a lesser offense included within the greater offense alleged in count six, the defendant's double jeopardy rights were violated. See *State* v. *Mincewicz*, 64 Conn. App. 687, 693, 781 A.2d 455 (for purposes of double jeopardy, greater offense is same offense as any lesser included offense, and vice versa, and imposition of multiple punishments for both offenses violates double jeopardy prohibitions of state, federal constitutions), cert. denied, 258 Conn. 924, 783 A.2d 1028 (2001).

Having reached the conclusion that the defendant's double jeopardy rights were violated, we must next determine the proper remedy and course of action for the trial court on remand. "[T]he remedy in a case such as this is to combine the conviction on the lesser included offense with the conviction on the greater and to vacate the sentence on the lesser included offense." Id., 693–94; see also *State* v. *Chicano*, supra, 216 Conn. 721–25. Accordingly, the defendant's conviction of interfering with an officer must be combined with his conviction of assault of public safety personnel, and his sentence for interfering with an officer must be vacated.

II

The defendant claims that the state produced insufficient evidence to establish that he had acted with the requisite intent to breach the peace, to assault a peace

officer and to interfere with a peace officer.[11] We do not agree.

The standard of review for sufficiency of the evidence claims has been stated frequently and is well established. We apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 175, 778 A.2d 955 (2001).

It is well established that the question of intent is purely a question of fact. *State* v. *Adams*, 14 Conn. App. 119, 124, 539 A.2d 1022 (1988). "Intent may be, and

___

[11] We note that the defendant raises two claims with respect to the issue of intent: (1) whether there was sufficient evidence to support a finding of intent with respect to the crimes charged; and (2) whether the defendant was capable of forming the requisite intent based upon a mental defect, an affirmative defense. We will only consider the first of these two claims.

The affirmative defense of mental disease or defect is defined by General Statutes § 53a-13 (a), which provides in relevant part: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law." In light of that definition, the second portion of the defendant's claim clearly relies on the affirmative defense of mental defect. Consequently, Practice Book § 40-17 is applicable. Section 40-17 requires a party to notify the prosecuting authority of an intention to rely on the defense of mental disease or defect within forty-five days after the first pretrial conference. If a party fails to comply with the requirements of Practice Book § 40-17, the court has the discretion, for cause shown, to permit late filing of the notice. In essence, the defendant requests us to exercise the discretion of the trial court, to assume that he had adequate cause for not timely complying with the rule and to make findings of fact as to his state of mind at the time of the incident. "To state the obvious, we do not make findings of fact"; *Anquillare, Lipnicki, Ruocco & Co.* v. *VCR Realty Associates,* 72 Conn. App. 821, 825 n.7, 808 A.2d 682 (2002); and the argument comes too late.

usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Anderson*, 74 Conn. App. 633, 638, 813 A.2d 1039, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003).

A

The defendant claims that the state offered insufficient evidence of an "intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof"; General Statutes § 53a-181 (a); to support his conviction of two counts of breach of the peace under § 53a-181 (a). We are not persuaded.

General Statutes (Rev. to 1999) § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in *violent*, tumultuous or threatening behavior in a public place . . . ." (Emphasis added.) We previously have defined the term "violent," for purposes of that provision, as "characterized by extreme force and furious or vehement to the point of being improper, unjust, or illegal." (Internal quotation marks omitted.) *State* v. *Samuel*, 57 Conn. App. 64, 70, 747 A.2d 21, cert. denied, 253 Conn. 909, 753 A.2d 942 (2000).

In light of the facts presented at trial, it was reasonable for the jury to conclude that the defendant acted with the requisite intent. See *State* v. *Anderson,* supra, 74 Conn. App. 638. First, the defendant caused inconvenience and annoyance when he stopped traffic, damaged vehicles, attempted to drag people from cars and wrestled with the police. Sutphin, the driver of the utility truck, testified that the defendant's actions caused him to abandon his truck in the middle of the roadway. Ezzo testified that citizens reported to the police that the defendant was creating a disturbance in the roadway. Police Officer Steven Pedbereznak testified that he was dispatched to the scene on information that there was a disturbance. Pedbereznak also testified that when he arrived on scene, he observed the defendant struggling with police officers in the middle of the corner of Cooke Street and Buckingham Street.

Second, the jury could have reasonably concluded that the defendant was fighting and acting in a violent manner because extensive force was required, as evidenced by the use of seven officers and Mace, to place him under arrest.

Construing the evidence in the light most favorable to sustaining the verdict, and considering reasonable inferences from the facts, we conclude that the jury reasonably could have determined that the cumulative force of the evidence established that the defendant acted with the requisite intent to breach the peace.

### B

The defendant claims that the state offered insufficient evidence of an "intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties"; General Statutes § 53a-167c (a); to support his conviction of one count of assaulting public safety personnel under § 53a-167c (a) (1). We are not persuaded.

To consider the defendant's claim, we must determine whether Ezzo was a "peace officer" within the meaning of General Statutes §§ 53a-3 (9) and 53a-167c, and whether Ezzo was acting in the performance of his duties. See *State* v. *Casanova*, 255 Conn. 581, 592, 767 A.2d 1189 (2001). The term "peace officer" is defined in relevant part as "a member of the Division of State Police within the Department of Public Safety or an organized local police department . . . ." General Statutes § 53a-3 (9). Ezzo, as a member of the Waterbury police department, is a peace officer within the meaning of that definition.

"[A] police officer has the duty to enforce the laws and to preserve the peace. Whether he is acting in the performance of his duty . . . must be determined in the light of that purpose and duty. If he is acting under a good faith belief that he is carrying out that duty, and if his actions are reasonably designed to that end, he is acting in the performance of his duties. . . . [His] official duties may cover many functions which have nothing whatever to do with making arrests. . . . The phrase in the performance of his official duties means that the police officer is simply acting within the scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own. . . . These are factual questions for the jury to determine on the basis of all the circumstances of the case and under appropriate instructions from the court." (Internal quotation marks omitted.) *State* v. *Casanova*, supra, 255 Conn. 592–93.

Again, the jury could infer intent from the defendant's conduct. See *State* v. *Anderson*, supra, 74 Conn. App. 638. At trial, Ezzo, a member of the Waterbury police department, a peace officer, testified that while he was on patrol, he received notice from a passing motorist that the defendant was in the middle of the street

blocking traffic. Ezzo arrived at the scene in a clearly marked police patrol vehicle and in full police uniform. When Ezzo attempted to place the defendant under arrest, the defendant began to struggle with Ezzo. During the struggle, the defendant punched and struck Ezzo's face and shoulder.

On the basis of that testimony, construing the facts in the light most favorable to sustaining the conviction, and because the issue of intent is a question of fact, we conclude that the jury reasonably could have concluded that the cumulative force of the evidence established that the defendant had formed the requisite intent to assault a peace officer.

## C

The defendant claims that the state offered insufficient evidence for a finding of intent to support his conviction of interfering with an officer under § 53a-167a.[12]

"This court has stated that General Statutes § 53a-167a . . . defines interfering to include obstruction, resistance, hindrance or endangerment. . . . By using those words it is apparent that the legislature intended to prohibit any act which would amount to meddling in or hampering the activities of the police in the performance of their duties. . . . In enacting [that section], the legislature sought to prohibit behavior that hampers the activities of the police in the performance of their duties. . . . The statute's purpose is to ensure orderly compliance with the police during the performance of their duties; any act intended to thwart this purpose violates the statute." (Citation omitted; internal quotation marks omitted.) *State* v. *Hampton*, 66 Conn. App.

---

[12] Although we determined in part I that we must remand the case with direction to vacate the sentence on the conviction of interfering with an officer, we do not reverse the conviction. Consequently, we must consider the defendant's claim of evidentiary insufficiency.

357, 375, 784 A.2d 444, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001). Although the statute does not contain a specific intent element, we previously have construed the requisite mental state to include an intent "to interfere with an officer by resisting arrest." Id., 376.

Again, the jury could infer intent from the defendant's conduct. See *State* v. *Anderson*, supra, 74 Conn. App. 638. At trial, Ezzo testified that when he informed the defendant that he was being placed under arrest, the defendant began to resist. The defendant's efforts at resisting arrest ultimately resulted in Ezzo wrestling the defendant to the ground. Moreover, it ultimately required seven police officers and thirty minutes to subdue the defendant. The jury could have reasonably concluded that the defendant intended his activity, resisting arrest, to interfere with the police officer's duties. Consequently, we conclude that there was sufficient evidence for a jury finding of intent to interfere with a peace officer.

### III

The defendant claims that the court violated his right to counsel under the sixth and fourteenth amendments to the United States constitution by failing to canvass him adequately to determine if he was making a knowing and intelligent waiver of his right to counsel in accordance with Practice Book § 44-3.[13] Specifically, the defendant argues that during the canvass, the court (1) failed to state the proper charges against him and (2) inaccurately explained the defendant's maximum permissible punishment.[14] See Practice Book § 44-3 (3). We disagree.

---

[13] See footnote 4.

[14] The multifactor analysis of Practice Book § 44-3 is designed to assist the court in determining whether the defendant actually made the decision to waive his right to counsel in a knowing, voluntary and intelligent fashion. See *State* v. *Webb*, 238 Conn. 389, 429, 680 A.2d 147 (1996); see also *State* v. *Day*, 233 Conn. 813, 822, 661 A.2d 539 (1995). The defendant in this case, however, does not claim that the canvass failed to comply with all of Practice

Because the defendant concedes that his claim is unpreserved, he asks for review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. The first two steps in the *Golding* analysis address the reviewability of the claim, and the last two steps involve the merits of the claim. *State* v. *Hafford*, 252 Conn. 274, 305, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000). With regard to the first two prongs of *Golding*, we conclude that the record is adequate for review and that the defendant's right to counsel clearly is of constitutional magnitude. The defendant's claim fails to satisfy *Golding*'s third prong, however, because we conclude that the court's canvass was adequate for the court to conclude that the defendant knowingly and intelligently waived his right to counsel.

The following additional facts are necessary to our resolution of the defendant's claim. On July 19, 2001, the defendant appeared at a hearing on his motion to dismiss his counsel. The defendant sought to dismiss his attorney, claiming that the attorney never sought to have a charge of failure to appear vacated. The court dismissed the failure to appear charge and denied the motion because, in the court's opinion, the attorney-client relationship had not broken down. The court indicated that the defendant could "resurface the motion" if he desired to do so in the future.

Prior to the commencement of trial, on October 11, 2001, the defendant again sought to have the court consider his motion to dismiss his counsel. The court ques-

Book § 44-3. Rather, the substance of the defendant's claim is that the canvass failed to comply with the requirements of Practice Book § 44-3 (3). Section 44-3 (3) requires the court to satisfy itself that the defendant comprehends the nature of the charges and proceedings, and comprehends the range of permissible punishments. Accordingly, we limit our review of the defendant's claim to determine whether the arguments raised preclude a finding of compliance with Practice Book § 44-3 (3), and, in turn, whether such a determination would preclude a finding of a knowing and intelligent waiver.

tioned the defendant about his age, education, prior trial experiences, understanding of the charges against him, knowledge of legal procedure and laws, and personal views regarding his ability to represent himself.[15]

---

[15] The court's October 11, 2001 canvass was as follows:

"[Defense Counsel]: I think [the defendant] wants to be reheard on his pro se [motion].

"The Court: Well, last time he wanted to dismiss you and I denied that. This is just a letter to me—okay. What I'm—how old are you, sir?

"The Defendant: Thirty-seven.

"The Court: How far have you gone in school?

"The Defendant: I completed twelve years, and I have a couple of years—well, I have a couple of credits.

"The Court: College?

"The Defendant: Yes.

"The Court: Now, have you ever been on trial before?

"The Defendant: Once. Yes, sir.

"The Court: Did you ever represent yourself at a trial?

"The Defendant: No. I was with an attorney.

"The Court: Sorry?

"The Defendant: I was with an attorney.

"The Court: Now, you understand the charges you're facing?

"The Defendant: Absolutely.

"The Court: And do you know what the—and you've talked to [your attorney] about the elements the state has to prove to convict you on those charges? Yes? No? Well, you're charged with assault third, breach of peace, criminal mischief, third, assault on medical personnel, interfering with an officer, in one file. And in the motor vehicle file, driving under suspension, no insurance, failure to display license, failure to appear in the second degree. Do you understand that?

"The Defendant: Yes, sir. Sir, I don't know if Your Honor might recall, but on—I think it was maybe July 19 when you vacated that—

"The Court: Let's not worry about that right now. I want to advise you, assault third is when you hit someone and cause pain; a breach of the peace is having an argument with somebody; a mischief in the third degree, you damage someone's property and the value—just damaging someone's property; assault on medical personnel, you hit, cause pain to a medical [person] who's identifiable in his performing his or her duty. And you can get a total of twenty-two—twenty-three years in jail. Okay? Under suspension is ninety days. Do you understand that? Driving under suspension. That can be ninety days in jail. Do you understand that? Yes? No?

"The Defendant: Yes.

"The Court: Are you familiar with laws regarding evidence, pretrial motions or whatever?

"The Defendant: Vaguely.

Finding the defendant competent, the court granted the defendant's motion and appointed his attorney as standby counsel.

"Although it may be settled law that a criminal defendant has an absolute right to self-representation, that right is not self-executing. A trial court in this state must satisfy *itself* that several criteria have been met before a criminal defendant properly may be allowed to waive counsel and proceed pro se. . . . Those criteria include a determination by the court (1) that the

"The Court: And you realize in a trial there are certain rules and a judge can't help you? You understand that?

"The Defendant: Absolutely.

"The Court: And whatever happens during the pretrial, during the trial, whatever, can affect the outcome of your case? You can actually be picking a jury and pick the wrong people or during the trial make a mistake and that can affect the outcome of your case. Do you understand that?

"The Defendant: Yes, sir.

"The Court: Do you feel you possess the training and experience and skill to represent yourself and try a case?

"The Defendant: Professionally, no. I haven't school on that. But based on reading material, the very little you have just read, I have a bit of understanding of that.

"The Court: There is a saying that one who represents himself has a fool for a client, because you're too close to a case. That's a saying.

"The Defendant: I heard it.

"The Court: You want to represent yourself. Am I right?

"The Defendant: No, sir. I ask to stand pro se beside my current counsel. That was the motion. That was the—

"The Court: You see, what happens in our law, in Connecticut you can't be cocounsel, you and [your attorney]. Either she represents you or you represent yourself and she'll be there as standby counsel to answer any questions you may have.

"The Defendant: That's actually what I was saying.

"The Court: But at counsel table you're sitting by yourself. She's sitting in the audience. If you have a question, you call her down. Now, after everything we've gone through, do you still want to represent yourself?

"The Defendant: Please.

"The Court: Now, my job today is not to say whether you can represent yourself in a competent manner; it's whether you're competent to make the decision yourself, and I find you're competent to make the decision. [Your attorney] is out. She's standby counsel. You're representing yourself."

defendant is competent to waive counsel, and (2) that his waiver is knowing, intelligent and voluntary. . . .

"A defendant is deemed competent to waive counsel when it is shown that he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.[16] . . . After a determination by the court that a criminal defendant is competent, its next task is to determine whether his decision to waive the right to counsel is knowing, intelligent and voluntary. . . . A defendant has knowingly and intelligently waived the right to counsel if the trial judge finds that he (1) [h]as been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) [p]ossesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) [c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) [h]as been made aware of the dangers and disadvantages of self-representation." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Rose*, 73 Conn. App. 702, 707–708, 809 A.2d 534, cert. denied, 262 Conn. 927, 814 A.2d 382 (2002); see also Practice Book § 44-3.

While "[a] defendant . . . does not possess a constitutional right to a specifically formulated canvass . . . [h]is constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish [in the court's opinion] that the defendant's waiver was voluntary and knowing. . . . In other words, the court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the

---

[16] We note that the defendant does not claim that he was not competent to make the determination to waive his right to counsel.

factors listed in Practice Book § 961 [now § 44-3] if the record is sufficient to establish that the waiver is voluntary and knowing." (Internal quotation marks omitted.) *State* v. *Taylor*, 63 Conn. App. 386, 402, 776 A.2d 1154, cert. denied, 257 Conn. 907, 777 A.2d 687, cert. denied, 534 U.S. 978, 122 S. Ct. 406, 151 L. Ed. 2d 308 (2001). "[A] record that affirmatively shows that [the defendant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will sufficiently supports a waiver." (Internal quotation marks omitted.) *State* v. *Oliphant*, 47 Conn. App. 271, 277–78, 702 A.2d 1206 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998).

## A

The defendant first argues that his waiver was not knowing and intelligent because the court failed to inform him properly of the charges against him. In particular, the defendant states that the court (1) failed to cite the specific statutes contained in the information, (2) failed to explain the essential elements of each crime charged and (3) improperly referred to the term "medical personnel" as opposed to "public safety personnel" when referencing § 53a-167c.[17] We are not persuaded.

[17] Although not explicitly raised in the defendant's brief, the substance of his first two arguments is that while the court, during its canvass of him, was under no affirmative obligation to inform him of the elements of the charges against him, the court, if it undertook to inform, had a duty not to misinform. The defendant cites no authority for that proposition of law, and our independent research has yielded none. After a thorough review of the case law and numerous treatises, we conclude that under the facts in this case, the court properly canvassed the defendant, despite stating an incorrect element of a charge.

The purpose of the canvass, regardless of its form, is to establish, in the mind of the court, that the defendant's waiver was voluntary and knowing. See *State* v. *Gethers*, 193 Conn. 526, 539, 480 A.2d 435 (1984). It also has been stated that the court need not actually explain the elements of the offense to the defendant, although a discussion of them would help to show, again, to the court, that the defendant understood the nature of the crimes charged. See *State* v. *Wolff*, 237 Conn. 633, 655–57, 678 A.2d 1369 (1996) (understanding elements of charge is but only *one* factor in determining defendant's understanding of nature of charges).

In general, "a trial court may appropriately presume that defense counsel has explained the nature of the offense in sufficient detail." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 430, 680 A.2d 147 (1996). The defendant need not "be specifically informed of the particular elements of the crimes charged before being permitted to waive counsel and proceed pro se. In fact . . . perfect comprehension of each element of a criminal charge does not appear to be necessary to a finding of a knowing and intelligent waiver. . . . A discussion of the elements of the charged crimes would be helpful, *and may be one of*

The question then becomes whether the court's imprecise recitation of the elements precludes a finding of a knowing waiver. Some courts have commented that "perfect *comprehension* of each element of a criminal charge does not appear to be necessary to a finding of a knowing and intelligent waiver." (Emphasis added.) *United States* v. *Robinson*, 913 F.2d 712, 715 (9th Cir. 1990). Although comprehension is different from misinformation, it would appear that courts do not focus attention on the defendant's subjective understanding of the elements, but instead, as long as the totality of the canvass reasonably could permit a finding by the court that the defendant knowingly waived his right to counsel, then the canvass would be found adequate. That is, the court must satisfy itself "that the defendant was aware of the risks associated with self-representation and that [the defendant's] choice was made with eyes open." (Internal quotation marks omitted.) *Torres* v. *United States*, 140 F.3d 392, 401 (2d Cir.), cert. denied, 525 U.S. 1042, 119 S. Ct. 595, 142 L. Ed. 2d 537 (1998).

As with Practice Book § 44-3 (3), the canvass involved with the acceptance of a plea pursuant to Practice Book § 39-19 requires an understanding of "the nature of charges" for the court to conclude that the defendant knowingly entered a plea. A plea cannot truly be voluntary unless the defendant possesses an understanding of the law in relation to the facts. To that end, "a trial court must confirm on the record that a defendant's plea was made intelligently and voluntarily. . . . At the appellate level, a determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances. . . . Moreover, while engaged in that review, we are mindful that the defendant's plea is not rendered unknowing and involuntary even if [the defendant] holds a *less than perfect understanding* [of an aspect of the] situation . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Irala*, 68 Conn. App. 499, 507, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002).

With those principles in mind, we address the defendant's claim.

*the factors involved in the ultimate determination* of whether the defendant understands the nature of the charges against him. A description of the elements of the crime is not, however, a sine qua non of the defendant's constitutional rights in this context. Indeed, in our cases we have approved of a defendant's assertion of the right to proceed pro se where the record did not affirmatively disclose that the trial court explained the specific elements of the crimes charged to the defendant as long as the defendant understood the nature of the crimes charged. . . . In each of those cases, we concluded that the defendant had validly waived his right to counsel, although none of those decisions indicated that the defendant had been expressly apprised of the elements of the crimes charged." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Wolff*, 237 Conn. 633, 655–57, 678 A.2d 1369 (1996).

On October 11, 2001, the court encountered, by all appearances, a competent and knowledgeable defendant.[18] The court knew that the defendant had had the chance to confer with court-appointed counsel before directing the dismissal of that counsel. The court engaged in a thorough discussion with the defendant to convince itself that the defendant was competent and that his waiver was valid. The court inquired about the defendant's understanding of the charges and the defendant stated that he "[a]bsolutely" understood. Despite the defendant's claimed understanding, the court proceeded to describe the charges and the elements associated with each crime. The defendant also acknowledged the fact that his attorney had discussed the elements of the charges.

[18] During the canvass, the court told the defendant: "Now, my job today is not to say whether you can represent yourself in a competent manner; it's whether you're competent to make the decision yourself, and I find you're competent to make the decision."

Although the defendant is correct that the court substituted "medical personnel" for "public safety personnel" when referring to the assault charge, the defendant was put on notice of the substance of the crime by the court, his former counsel and the charging instrument.[19] We do not believe that this precluded the defendant from understanding the "nature of the charges" against him. The information put the defendant on notice of the crimes charges because it used the proper term, "public safety personnel," cited to § 53a-167c and repeatedly used the term "peace officer." Because General Statutes § 53a-167c is entitled "[a]ssault of public safety or emergency medical personnel," the defendant was on notice that he was accused of assaulting a member of at least one of those two classes of personnel. During the canvass, the court informed the defendant that "assault on medical personnel, you hit, cause pain to a medical [person] who's identifiable in his performing his or her duty." Regardless of the victim's title, medical personnel or safety personnel, the defendant knew that he was being charged with violating § 53a-167c (a) (1), and the substance of the crime charged is the same regardless of whether public safety or emergency medical personnel are involved; that is, it is still a class C felony. See General Statutes § 53a-167c (b).[20]

[19] The charging instruments clearly and repeatedly placed the defendant on notice of the charges against him. In the original information dated December 5, 2000, the state charged the defendant in counts four and five with assault on a public safety-emergency medical personnel in violation of General Statutes (Rev. to 1999) § 53a-167c. On November 5, 2001, in a long form substitute information, the state again charged the defendant in counts five and six with "Assault of Public Safety Personnel in violation of Section 53a-167c (a) (1) . . . with intent to prevent a reasonably identifiable peace officer form performing his duties and while such peace officer was acting in the performance of his duties . . . caused physical injury to such peace officer . . . ."

[20] General Statutes § 53a-167c (b) provides in relevant part: "Assault of public safety or emergency medical personnel is a class C felony. . . ." We therefore disagree with the defendant's statement in his brief that he did not knowingly waive his right to counsel, in light of the incorrect citation, because, as the defendant argues, "[a]ssault on any medical personnel would

Additionally, the defendant does not dispute the fact that the part B information was filed because he previously had served a sentence for the same crime, assault of a peace officer, further emphasizing to the court his understanding of the nature of the charges against him. On the basis of that fact, during the July 19, 2001 hearing before the court, *Damiani, J.*, on the defendant's original motion to dismiss his counsel, the defendant stated that he had "just finished doing an extensive period of time for basically the same thing, actually the same thing." By his own admission, the defendant was aware that he was charged with assaulting public safety personnel in the present case. Three months later, before the same court, *Damiani, J.*, it was appropriate for the court to rely on the defendant's previous admission and to take it into consideration during the court's canvass to satisfy the court that the defendant was aware of the nature of the charges against him.

We conclude, in light of the totality of the canvass, that the court properly canvassed the defendant and did not, by an inaccurate statement during its canvass, render his waiver unknowing or unintelligent.

B

Finally, the defendant argues that the canvass was improper because the court did not accurately explain to him the maximum permissible punishment. More specifically, the defendant argues that although the court informed him that he was exposed to twenty-three years incarceration, the defendant actually was exposed to twenty-four years and nine months. Therefore, the defendant argues, the canvass was not adequate. We are not persuaded.

---

only be a misdemeanor punishable [by] up to one year in jail, not a felony punishable [by] up to ten years in jail under said statute."

The defendant's argument implies that although he was aware of an exposure period of twenty-three years, the additional twenty-one month difference precluded him from having a broad understanding of the charges against him and invalidated his waiver. Pursuant to the rules of practice, the court is required to satisfy itself, not the defendant, that the defendant "[c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a *broad understanding* of the case . . . ." (Emphasis added.) Practice Book § 44-3 (3).

The rules of practice do not, as the defendant suggests, require the court to satisfy itself that the defendant has a *precise* understanding of the maximum sentence. In light of the defendant's uncontested understanding of an exposure of twenty-three years, we conclude that the additional twenty-one month period did not preclude the court from believing that he had a broad understanding of the charges against him.

The judgment is reversed in part and the case is remanded with direction to combine the conviction of interfering with an officer with the conviction of assault of public safety personnel and to vacate the sentence on the conviction of interfering with an officer. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.